IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MDB COMMUNICATIONS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.:  05-CV-02131-PLF |
| v. | * | |
| | * | |
| HARTFORD CASUALTY INSURANCE | * | |
| COMPANY, | * | |
| | * | |
| Defendant. | * | |

*   *   *   *   *   *   *   *   *   *   *   *

**DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT**

A.  Introduction

Plaintiff, MDB Communications, Inc. ("MDB"), faced with substantial losses arising from the embezzlement of funds by its bookkeeper, chose to pursue a strategy that would maximize its recovery; it would both circumvent its insurance policy limits, and do so at the expense of the subrogation rights of its insurer, Hartford Casualty Insurance Company ("Hartford"). Specifically, MDB first recovered $279,000 from Marilyn Essex, its dishonest employee, and only then pursued a claim for an additional $180,359.71 in uninsured losses under the Hartford policy.

This effectively eliminated any possibility of subrogation by Hartford, which would otherwise have had priority in any recovery from Ms. Essex; Hartford would have paid the $90,000 in available coverage and then, in turn, Hartford would have been fully compensated through the settlement with Ms. Essex. Instead, by waiting to submit a claim until it received payment from Ms. Essex, MDB increased its potential recovery from $279,000 to $369,000 in contravention of the $90,000 policy limit at Hartford's

1

expense. MDB simply cannot circumvent Hartford's subrogation rights by delaying submission of its claim until the available funds from the dishonest employee were exhausted.

Under these circumstances, Hartford is entitled to summary judgment. First, Plaintiff failed to produce documents to support its claim as required by the policy before initiating the present litigation against Hartford. Second, Plaintiff cannot circumvent policy limits at the expense of Hartford's subrogation rights under the terms of the policy. Judgment in Hartford's favor is appropriate as a matter of law, and its motion for summary judgment should be granted.

**B.    Undisputed Facts**

1.    While employed as Plaintiff's bookkeeper from 1998-2005, Ms. Essex used her access to MDB's books and financial records to divert MDB's funds for her own using forged checks. *Exhibit D,* Deposition Transcript of Cary Hatch, at 9:4, 45:20-50:10. According to the Complaint, Essex embezzled at total of $103,477.09 from July 28, 2003 to July 28, 2004 and $76,882.62 from July 28, 2004 to July 28, 2005, i.e., a total of $180,359.71 over the two year period.  Complaint at ¶¶ 14, 31.

2.    Hartford provided a commercial package of insurance under Policy No. 42 SBA EV9713 DV to Plaintiff for its property and business located at 1050 17th St., NW, Suite 500, Washington, D.C. 20036, for the two relevant policy periods running from July 28, 2003 to July 28, 2004 and July 28, 2004 to July 28, 2005. *Exhibit A.* Hartford's insurance policy provided various insurance coverages, including an endorsement to the Special Property Coverage Form providing Employee Dishonesty Coverage. *Exhibit A, Tabs 1, 2.* As noted in the policy declarations, the Employee Dishonesty Coverage had a

limit of $20,000. *Exhibit A, Tabs 3,4*. This was extended by a Super Stretch Endorsement up to an additional $25,000 limit, for a total limit of $45,000 per policy year. *Exhibit A, Tabs 5,6*.

3.  Plaintiff discovered the embezzlement on or about February 7, 2005 and proceeded on its own to investigate its losses and negotiate a settlement with Ms. Essex totaling over $279,000. *Exhibit D*, 40:19-22; 50-56; 71:10-75:4; *Exhibit E*, Expert Report dated November 18, 2005.

4.  On or about April 12, 2005, Plaintiff submitted two proofs of loss dated April 8, 2005 to Hartford, one for each of the relevant policy periods, noting it loss as $153,857.47 from July 28, 2003 to July 28, 2004; and $76,882.62 from July 28, 2004 to July 28, 2005. *Exhibit B*.[1] These proofs of loss also noted that Plaintiff had already received monies in restitution from Ms. Essex, but applied this recovery to losses occurring prior to July 28, 2003. *Id.*

5.  The documentation MDB submitted in support of its claim demonstrated that it had been fully compensated by Ms. Essex for losses incurred while the Hartford policy was in effect, Hartford rejected Plaintiff's proofs of loss by correspondence dated August 11, 2005. *Exhibit C*. The Hartford simultaneously agreed to permit Plaintiff to submit new proofs of loss and/or documentation demonstrating that it had not been fully compensated if it did so within the 30 days. *Id.*

6.  Plaintiff submitted the identical proofs of loss with limited additional documentation on September 9, 2005, but again failed to provide any documentation establishing that it had not been fully compensated by Ms. Essex. *Exhibit F*.

3

7.      Plaintiff filed suit against Hartford on October 7, 2005 in the Superior Court for the District of Columbia alleging Hartford breached the insurance policy by failing to make payment for its claim. On November 1, 2005, Hartford removed the action to this Court.[2]

C.      **Relevant Policy Provisions**

As noted above, Hartford issued Policy No. 42 SBA EV9713 to MDB for two policy periods involved in the instant case. *Exhibit A*. The policy language and provisions relevant to the instant case are the same for both policy periods. The Special Property Coverage Form at Section E, Property Loss Conditions, includes the following:

> **3. Duties In The Event Of Loss Or Damage**
> You must see that the following are done in the event of loss or damage to Covered Property:
>
> \*   \*   \*
>
> **f.** *Permit us to inspect the property and records proving loss or damage.* Also permit us to take samples or damaged property for inspection, testing and analysis.
>
> \*   \*   \*
>
> **h.** *Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request.* We will supply you with the necessary forms.
>
> \*   \*   \*
>
> **4. Legal Action Against Us**
> No one may bring a legal action against us under this insurance unless:

---

[1] There is a discrepancy between the amount claimed by Plaintiff on its proofs of loss (Exhibit B) and its Complaint. These amounts differ from those presented in the records produced by Plaintiff and reviewed by Hartford's accounting expert. *See Exhibit M.*

[2] On March 31, 2006, after the close of discovery, and less than one business day before the dispositive motions deadline, Plaintiff filed a Motion to Amend its Complaint in this case, well as an additional lawsuit against Hartford concerning four new proofs of loss for other policy periods it submitted for the first time the same day. Hartford has obviously not had an adequate opportunity to review and consider the new allegations and proofs of loss prior to the deadline for filing the present motion. Hartford will more fully address these last minute maneuvers through its Reply Memorandum.

4

>    **a.** *There has been full compliance with all of the terms of this insurance.*
>
>    \* \* \*
>
>    **6. Recovered Property**
>    If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property subject to the Limit of Insurance.

*Id.* at Tab 7 (emphasis added).

The Special Property Coverage Form includes an Employee Dishonesty Coverage endorsement containing additional coverage. *Id.* at Tabs 3, 4. In relevant part, it provides:

>    **D. LIMITS OF INSURANCE**
>    The most we will pay for each Occurrence of loss under this Endorsement is the Employee Dishonesty Limit of Insurance stated in the Declarations.
>    The Additional Coverages are included in this Limit of Insurance.
>
>    **E. OCCURRENCE DEFINITION**
>    As used in this Endorsement, **Occurrence** means all loss caused by, or involving one or more "employees", whether the result of a single act or series of acts.

*Id.* The Common Policy Conditions read in relevant part:

>    **K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**
>
>    1. Applicable to Property Coverage:
>    If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. *That person or organization must do everything necessary to secure our rights and must do nothing to impair them.* But you may waive your rights against another party in writing:
>
>        a.  Prior to a loss to your Covered Property;

5

      b. After a loss to your Covered Property only if, at the time of the loss, that party is not one of the following:
         (1) Someone insured by this insurance;
         (2) A business firm:
            (a) Owned or controlled by you; or
            (b) That owns or controls you; or
         (3) Your tenant.

*Id.* at Tab 8 (emphasis added).

The policy provisions at issue in this matter are clear and unambiguous. The Employee Dishonesty Coverage form provides limited coverage for each occurrence, for which there must be loss caused by or involving an employee. The insured is required permit inspection of its records which prove its loss or damage and to submit sworn proofs of loss within 60 days of Hartford's request and the proofs of loss must contain requested information supporting the insured's claim. Furthermore, the insured may not proceed with legal action against Hartford unless it has complied with all of the policy provisions. Following a loss and upon payment for a claim, the insured must transfer any rights of recovery to Hartford and must not do anything to impede them.

    **D.**     **Argument**

        **1.**     **Standard of Review for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable fact-finder to return a verdict for either party. *Id.* at 252. The non-moving party must set

forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Cellotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Furthermore, District of Columbia courts have recognized that the resolution of the interpretation of insurance policies is particularly amenable by means of summary judgment as "written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 985 (D.C. 2001) (citations omitted).

> 2. **MDB's failure to submit documentation in support of its claim consistent with policy conditions bars MDB's action against Hartford in the present case.**

For over a century, courts have also recognized the importance of policy provisions requiring that an insured produce information and documents necessary for evaluation of a loss and claim. As the Supreme Court explained in the context of examinations under oath, the purpose of such investigative tools is

> …to enable the company to possess itself of all knowledge, and all information as to all sources and means of knowledge, in regards to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims. *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94-95 (1884).

*See generally, Powell v. United States Fidelity & Guar. Co.*, 855 F. Supp. 858. 860 (E.D. Va. 1994), aff'd, 88 F.3d 271 (4th Cir. 1996) (granting summary judgment to insurer where insured refused to provide requested documents and answer questions regarding financial condition at examination under oath) (citations omitted); *Rymsha v. Trust Ins. Co.*, 51 Mass. App. Ct. 414, 746 N.E.2d 561 (2001) (affirming summary judgment for insurer where insured failed to provide financial records in connection with a theft claim); *Tran v. State Farm Fire & Cas. Co.*, 136 Wn. 2d 214, 961 P.2d 358 (1998)

(affirming summary judgment for insurer where insured refused to produce financial records in connection with a theft claim); *DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 662 A.2d 1027 (1995) (affirming summary judgment for insurer where insured refused to produce financial records in connection with a theft claim).

*Powell* is particularly helpful in the present case. In *Powell,* the insureds filed a claim with their insurer, USF&G, after their home was destroyed by fire. *Powell*, 88 F.3d at 272. The Powells eventually submitted to examinations under oath, but refused to answer questions regarding their financial condition, and refused to turn over documents regarding their finances such as their tax returns. *Id.* at 272-273. Recognizing that such information was clearly material to an insurer's investigation, and that an insured had an obligation to comply with policy conditions, the Fourth Circuit affirmed summary judgment in USF&G's favor. *Id.* at 274.

In this case, the policy requires that an insured permit the inspection of its records proving loss or damage and submit a sworn statement of loss with the information requested within 60 days after a request from the insurer. *Exhibit A, Tab 7.* By correspondence from its attorney dated April 11, 2005, MDB submitted two initial sworn proofs of loss along with some documentation consisting primarily of copies of the checks allegedly forged in the two policy periods.[3] *Exhibits G, B.* Hartford repeatedly sought additional documentation relative to MDB's claim for several months. *Exhibits H,*

---

[3] On March 31, 2006, approximately a year after submitting its initial proofs of loss related to its claimed damages, MDB submitted four additional proofs of loss related to incident of embezzlement by its employee. On the same date, MDB filed a Motion to Amend its Complaint in the instant case as well as an additional lawsuit against Hartford concerning the four new proofs of loss. In both the proposed Amended Complaint and the new suit, MDB alleges that Hartford has breached its policy as it "refused to indemnify, reimburse, or pay MDB for its losses" relating to the four new proofs of loss. As these four proofs of loss were never submitted to Hartford, it is difficult to see how Hartford had any obligation to make payment for any such loss or damage described therein.

*I, J.* By correspondence dated August 11, 2005, Hartford rejected MDB's proofs of loss as there was no evidence supporting MDB's contention that it had not been fully compensated through its recovery from Ms. Essex. *Exhibit C.* Hartford agreed to permit MDB to submit proofs of loss with proper documentation within the following 30 days. *Id.* By correspondence dated September 8, 2005, MDB re-submitted its previous proofs of loss along with Ms. Essex's personnel file and documents related to the compensation MDB already received from Ms. Essex, but did not provide documentation concerning the total loss reflecting a loss in excess of its recovery from Ms. Essex. *Exhibit F.*

MDB filed the instant suit on October 7, 2005. In the course of discovery, Hartford forwarded MDB correspondence from its accounting expert dated November 18, 2005 requesting documentation of the MDB's loss. *Exhibit E.* By correspondence dated December 21, 2005, MDB provided Hartford with some more of the requested documentation. *Exhibit K.* Finally, for the first time on March 13, 2006, almost a year after Plaintiff's initial submission of its proofs of loss, Hartford's accounting expert had the opportunity to access the remaining requested documentation. *Exhibit L.*

Prior to filing the instant suit, Plaintiff repeatedly failed to provide requested documentation to support its claim that it incurred any loss for which it had not been compensated by Ms. Essex. Instead, the only documentation submitted by MDB indicated that it had not incurred any loss due to Ms. Essex's embezzlement during the two policy periods. *Exhibits C, E, L.* The policy clearly requires that an insured submit requested information and documentation, and the need for compliance to permit evaluation of a claim is obvious. Where, as in this case, MDB failed and otherwise refused to provide requested documentation supporting its claims until almost a year after

submission of its initial proofs of loss, and over five months after initiating the instant action, it breach of policy conditions bars legal action against Hartford. Summary judgment in favor of Hartford is therefore appropriate.

### 3. Plaintiff cannot circumvent policy limits at the expense of Hartford's subrogation rights under the terms of the policy.

Subrogation is an equitable right permitting an insurer to pursue recovery from the party responsible for an insured's loss even where no formal assignment has been made by an insured. Courts have recognized that "the principle of subrogation" should be "liberally applied" for the "protection of those who are its natural beneficiaries." *London Guarantee & Accident Co., Ltd. v. Enterprising Services, Inc.*, 192 A.2d 292, 293 (D.C. App. 1963) (citations omitted) (explaining that "equity confers 'instanter' upon the insurer who has paid the same rights that belong to the policyholder"). Subrogation is permitted so that the responsible party is ultimately obligated to make payment for its actions, and to prevent unjust enrichment of an insured from both the tortfeasor and its insurer. *Trinity Universal Insurance Co. v. Moore*, 134 A.2d 333, 335 (D.C. App. 1957).

Furthermore, where an insured decides to obtain compensation directly from a tortfeasor before making an insurance claim, an insurer may properly reject such a claim on the grounds that no loss has been incurred by the insured. *Miller v. St. Paul Ins. Co.*, 203 A.2d 923 (D.C. App. 1964). *Miller* involved an insured whose suitcase was damaged by an airline during his travels. *Id.* at 924. In that case, the insured decided to accept a new suitcase from the airline at the conclusion of his flight and then later sought to make a claim with his insurer for the cost of a new suitcase. *Id.* The insurance company denied the claim asserting that as the airline replaced the suitcase at no cost to the insured, the insured had not suffered any loss. *Id.* The trial court ruled that by

accepting the new suitcase from the airline, the insured acted to deprive the insurer of its right of subrogation against the airline and thereby released the insurer from any obligation under the policy to make payment for the subsequent claim. *Id.* at 924-25.

Because an insured's release of a tortfeasor bars the insurer from asserting its subrogation rights under an insurance policy, an insured cannot pursue recovery from its insurer after doing so. *Federal Ins. Co. v. Plaza Drugs, Inc.*, 333 F. Supp. 1305, 1307-08 (D.D.C. 1971) (*citing Soper v. First Security Ins. Co.*, 148 A.2d 580 (D.C. App. 1959). In *Soper*, the insured instituted suit against the driver and owner of a car responsible for the insured's injuries and damage to his truck in one court and while simultaneously pursuing recovery from his insurer for the vehicle damage. *Soper*, 148 A.2d at 581-82. The insured subsequently settled the suit against the driver and owner of the vehicle for $9,000 and continued to pursue his suit against the insurer for $1521. *Id.* Holding that the release of the tortfeasor by the insured was a complete defense to the insured's suit against the insurer, the court explained that the release "deprived the insurer of its right to subrogation granted it in the policy to enable it to recoup its loss from the wrongdoer. The policy requirement that the insured shall do nothing after loss to prejudice the insurer's right of subrogation was thus breached by the insured, and as a result the insured loses his right of action." *Id.* at 582.

The principles in the *Miller* and *Soper* cases are instructive when applied to the instant case. Once MDB discovered the embezzlement by Marilyn Essex on February 7, 2005, it had a number of recovery options. For example, MDB could have pursued a claim with Hartford and then obtained recovery directly from Ms. Essex for its uninsured loss. Instead, before submitting a claim with Hartford, MDB elected to obtain as much

11

recovery from Ms. Essex as it could on its own. *Exhibit D,* 73-75:4. MDB collected over $279,000 from Ms. Essex, but then sought to recover policy limits under the Hartford policy ($45,000 for two consecutive policy years), for a total of $90,000. *Id., Exhibits B, E, L.*[4] This effectively eliminated any possibility of subrogation by Hartford, which would otherwise have had priority in any recovery from Ms. Essex; Hartford would have paid the $90,000 in available coverage and then, in turn, Hartford would have been fully compensated through the settlement with Ms. Essex. Instead, by waiting to submit a claim until it received payment from Ms. Essex, MDB increased its potential recovery from $279,000 to $369,000 in contravention of the $90,000 policy limit at Hartford's expense. MDB simply cannot increase its available coverage at the expense of Hartford's subrogation rights consistent with the terms of the policy.

MDB has compromised Hartford's subrogation rights, and failed to fulfill its obligation under the policy to "do everything necessary to secure [Hartford's] subrogation rights" and "do nothing after loss to impair them." *Exhibit A, Tab 8.* Summary judgment in Hartford's favor is therefore appropriate. *Miller v. St. Paul Ins. Co.,* 203 A.2d 923 (D.C. App. 1964); *Soper v. First Security Ins. Co.,* 148 A.2d 580 (D.C. App. 1959).

### E.   Conclusion

Hartford is entitled to summary judgment. First, Plaintiff failed to produce documents to support its claim as required by the policy before initiating the present litigation against Hartford. Second, Plaintiff cannot circumvent policy limits at the

---

[4] Of its own volition and without notification to Hartford, MDB also elected to institute suit against the Bank of America in the Superior Court for the District of Columbia seeking over $200,000 in damages relating to the embezzlement and hopes to recover additional restitution from Essex in the event any criminal proceedings are brought against her. *Exhibit D,* 74:3-77:1.

12

expense of Hartford's subrogation rights under the terms of the policy. Judgment in Hartford's favor is appropriate as a matter of law, and its motion for summary judgment should be granted.

Respectfully submitted,

_____/s/_____
GEORGE E. REEDE, JR.
D.C. Bar No. 43062
Niles, Barton & Wilmer, LLP
111 S. Calvert St., Suite 1400
Baltimore, MD  21202
Telephone:  (410)783-6300
Fax:  (410)783-6410
*Attorney for Defendant*

## TABLE OF AUTHORITIES

Fed. R. Civ. P. 56(c).

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)

*Cellotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81 (1884)

*DiFrancisco v. Chubb Ins. Co.*, 283 N.J. Super. 601, 662 A.2d 1027 (1995)

*Federal Ins. Co. v. Plaza Drugs, Inc.*, 333 F. Supp. 1305 (D.D.C. 1971)

*London Guarantee & Accident Co., Ltd. v. Enterprising Services, Inc.*, 192 A.2d 292 (D.C. App. 1963)

*Miller v. St. Paul Ins. Co.*, 203 A.2d 923 (D.C. App. 1964)

*Powell v. United States Fidelity & Guar. Co.*, 855 F. Supp. 858. 860 (E.D. Va. 1994), *aff'd*, 88 F.3d 271 (4th Cir. 1996)

*Rymsha v. Trust Ins. Co.*, 51 Mass. App. Ct. 414, 746 N.E.2d 561 (2001)

*Soper v. First Security Ins. Co.*, 148 A.2d 580 (D.C. App. 1959)

*Tran v. State Farm Fire & Cas. Co.*, 136 Wn. 2d 214, 961 P.2d 358 (1998)

*Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978 (D.C. App. 2001)

*Trinity Universal Insurance Co. v. Moore*, 134 A.2d 333 (D.C. App. 1957)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of April 2006, a copy of the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment was served via electronic transmission and mail upon:

Roy I. Niedermayer, Esquire
Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chtd.
4800 Hampden Ln., 7th Floor
Bethesda, MD 20814
*Attorney for Plaintiff*

_____/s/_____
GEORGE E. REEDE, JR., Bar No. 43062