**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MDB COMMUNICATIONS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 05-CV-02131-PLF |
| | ) |
| HARTFORD CASUALTY INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

**AFFIDAVIT OF CARY HATCH IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1.  My name is Cary Hatch, and I am the President and CEO of MDB Communications, Inc. ("MDB").

2.  I am over eighteen years of age and competent to testify to the facts contained in this affidavit which are true and based on my personal knowledge.

3.  MDB Communications, Inc. ("MDB") and Hartford Casualty Insurance Company ("Insurance Company") entered into a contract of casualty insurance identified as Policy No. 42 SBA EV9713 DV ("Policy 1").

4.  An authentic, genuine and accurate copy of Policy 1 is attached in the Appendix to plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment.

5.  Policy 1 included indemnity coverage of MDB for losses arising from employee dishonesty under Employee Dishonesty Coverage Addendum and Super Stretch Endorsement for Employee Dishonesty.

6.  The primary limits of coverage for employee dishonesty in Policy 1 under the Employee Dishonesty Coverage Addendum was $20,000 with additional limits of

coverage for employee dishonesty under the Super Stretch Endorsement for Employee Dishonesty of $25,000.

7. The term of Policy 1 was July 28, 2003 until July 28, 2004.

8. MDB Communications, Inc. ("MDB") and Insurance Company entered into a contract of casualty insurance identified as Policy No. 42 SBA EV9713 DV ("Policy 2").

9. An authentic, genuine, and accurate copy of Policy 2 is attached in the Appendix to plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment.

10. Policy 2 included indemnity coverage of MDB for losses arising from employee dishonesty under Employee Dishonesty Coverage Addendum and Super Stretch Endorsement for Employee Dishonesty.

11. The primary limits of coverage for employee dishonesty in Policy 2 under the Employee Dishonesty Coverage Addendum was $20,000 with additional limits of coverage for employee dishonesty under the Super Stretch Endorsement for Employee Dishonesty of $25,000.

12. The term of Policy 2 was July 28, 2004 until July 28, 2005.

13. At all times during the policy terms of Policy 1 and Policy 2, MDB made timely payments of all the assessed premiums for these coverages and was not in default of any of its obligations under either policies.

14. MDB hired Marilyn Essex ("Employee") on May 3, 1999 as its Controller.

15. Employee had no authority to sign or indorse checks or other negotiable instruments on behalf of MDB.

16. I am an authorized signatory on the accounts of MDB.

17. From 1999 through February 7, 2005, Employee prepared checks drawn on the bank accounts of MDB and forged my signature on these checks.

18. The forged checks were deposited in the bank accounts of Employee or paid to third parties for her benefit.

19. Attached to my affidavit as Exhibit A are true and accurate lists of the checks during 1999 through 2004 on which Employee forged my signature. I have verified this list by review of each check or through other accounting methods.

20. Attached to my affidavit as Exhibit B is true and accurate copy of my affidavit listing the checks during 2005 on which Employee forged my signature. I have verified this list by review of each check or through other accounting methods.

21. During the period July 28, 1999 through July 28, 2000, MDB sustained losses in the amount of $79,219.51 as a proximate result of the dishonest acts of Employee.

22. During the period July 28, 2000 through July 28, 2001, MDB sustained losses in the amount of $102,230.72 as a proximate result of the dishonest acts of Employee.

23. During the period July 28, 2001 through July 28, 2002, MDB sustained losses in the amount of $126,330.44 as a proximate result of the dishonest acts of Employee.

24. During the period July 28, 2002 through July 28, 2003, MDB sustained losses in the amount of $107,341.21 as a proximate result of the dishonest acts of Employee.

25. During the period July 28, 2003 through July 28, 2004, MDB sustained

losses in the amount of $153,857.47 as a proximate result of the dishonest acts and forgeries of Employee.

26. During the period July 28, 2004 through February 7, 2005, MDB sustained losses in the amount of $76,882.62 as a proximate result of the dishonest acts of Employee.

27. From July 28, 1999 through February 7, 2005, MDB suffered a total loss of $645,861.97.

28. To the best of my recollection, all MDB's policies with Insurance Company had terms running from July 28 of one year to July 28 of the following year.

29. MDB suffered 23.82% of its total loss during the period July 28, 2003 through July 28, 2004.

30. MDB suffered 11.90% of its total loss during the period July 28, 2004 through July 28, 2005.

31. On or about March 11, 2005, MDB recovered the sum of $33,532.11 from Employee as restitution by authorized payment to MDB of the amount of Employee's account balance in MDB's profit-sharing plan.

32. In May 2005, MDB recovered the sum of $225,428.64 from Employee as restitution by authorized payment to MDB from the sale proceeds of Employee's house.

33. On or about July 26, 2005, MDB recovered the sum of $2,550.00 from Employee as restitution by authorized payment to MDB from the sale proceeds of Employee's personal property.

34. During 2005, MDB recovered an additional sum of $18,000 from Employee as restitution by authorized payment to MDB from the sale proceeds of Employee's

automobile.

35. MDB recovered total restitution from Employee in the amount of $279,510.75.

36. MDB's total unrecovered losses from the dishonest acts of Employee are $366,351.22.

37. MDB provided Insurance Company with information of these losses arising from the dishonest acts of Employee.

38. MDB provided Insurance Company with Proofs of Loss Form for losses sustained under Policy 1.

39. MDB provided Insurance Company with Proofs of Loss Form for losses sustained under Policy 2.

40. Insurance Company refused to pay for any losses under the terms of Policy 1.

41. Insurance Company refused to pay for any losses under the terms of Policy 2.

42. From 1999 through July 28, 2005, MDB had continuous insurance coverage with Insurance Company for losses arising from employee dishonesty.

43. The total limits of coverage under MDB's policies with Insurance Company for employee dishonesty during the period July 28, 1999 through July 28, 2000 was $10,000.

44. The total limits of coverage under MDB's policies with Insurance Company for employee dishonesty during the period July 28, 2000 through July 28, 2001 was $25,000.

45. The total limits of coverage under MDB's policies with Insurance Company for employee dishonesty during the period July 28, 2001 through July 28, 2002 was $25,000.

46. The total limits of coverage under MDB's policies with Insurance Company for employee dishonesty during the period July 28, 2002 through July 28, 2003 was $25,000.

47. The total losses sustained by MDB from 1999 through 2005 from Employee's dishonest acts exceeds the restitution from Employee.

I hereby swear or affirm under the penalties of perjury in accordance with the requirements of 28 U.S.C. §1746 that the foregoing statements are true.

_____
Cary Hatch