| 14 | December 21, 2005 | To: Insurance Company's counsel From: MDB's counsel | MDB provided Insurance Company with the following: a) Copies of all forged checks; b) W-2 statements for Essex ; c) Copies of the missing checks lists generated by forensic auditors retained by MDB; d) A list of Essex's duties while she was employed at MDB. MDB explained that Essex had not submitted any expense reports. Finally, MDB explained that all of Essex's payroll checks were stored off site and were not readily available. |
| --- | --- | --- | --- |
| 15 | February 1, 2006 | To: MDB's counsel From: Insurance Company's counsel | Insurance Company provided dates that its accounting expert could review the requested documents at MDB's office. |
| 16 | February 14, 2006 | Series of emails between MDB's counsel and Insurance Company's counsel. | MDB asserted that it had provided Insurance Company with all relevant documents.  Insurance Company explained why it wanted to review Essex's payroll documents. |
| 17 | February 17, 2006 | Series of emails between MDB's counsel and Insurance Company's counsel. | MDB explained that it would continue to look for documents requested by Insurance Company.  Insurance Company replied that it looked forward to a response. |
| 18 | February 21, 2006 | To: Insurance Company's counsel From: MDB's counsel | MDB told Insurance Company that it had retrieved documents from storage that Insurance Company wanted to review. |

| 19 | February 22, 2006 | To: MDB's counsel From: Insurance Company's counsel | Insurance Company forwarded the contact information of its accounting expert so that MDB could schedule a time and date for its review of the documents. |
|---|---|---|---|
|  | March 13, 2006 |  | Review of MDB documents by Insurance Company accountant. |

Finally, Insurance Company has offered no evidence that it suffered any prejudice in its claim that it took a year to receive requested materials. *See Tran*, 961 P.2d at 366 (indicating that the insurer must prove prejudice to prevail in its claim that the insured breached the contract by the failing to cooperate with document requests of the insurer). Indeed, Insurance Company did not make payments under the Policies nor were its subrogation rights affected. In fact, as Insurance Company concedes, it was able to properly conclude the fact investigation that it had initiated. Insurance Company is not entitled to summary judgment on this ground.

B.    INSURANCE COMPANY HAS NOT SUFFERED ANY LOSS OF SUBROGATION RIGHTS BUT WILL HAVE ENFORCEMENT TO THE LIMITS OF ITS RIGHTS UPON ENTRY OF SUMMARY JUDGMENT ON MDB'S MOTION.

By their respective arguments, the parties apparently agree on one point at least: the dispositive, and only real issue, in this case is the proper allocation of the $279,510.75 recovered from Marilyn Essex between MDB and Insurance Company consistent with whatever subrogation rights Insurance Company may have and MDB's entitlement to be "made whole" by full reimbursement of its losses prior to the

- 9 -

application of subrogation.[1/]  In all other respects, Insurance Company's arguments in its Motion for Summary Judgment consciously avoids or simply misunderstands this central issue.

MDB's Motion for Summary Judgment raises this central issue in a more neutral and fairer context, and not one of imagined detriment to Insurance Company and studied deceit by MDB.  That dispositive issue for judgment simply is how much, if any, of the Essex restitution recovery should be applied as reduction of the amounts owed to MDB under the Policies.  Insurance Company has tried to create a legal smokescreen by decrying that it has suffered some prejudice as a result of the recovery from Essex, but that is not so.

MDB addresses completely the issue of Insurance Company's entitlement to any credit and the amount of that payment in its Motion for Summary Judgment.  Insurance Company does not have a right of subrogation until plaintiff has been "made whole" for all of its losses.  *Pacific Coast District v. Travelers Casualty and Surety*, 782 A.2d 269, 276 (D.C. 2001) (recognizing the applicability of the made whole doctrine in the District of Columbia).  MDB sustained total losses of $645,861.97 as a direct result of the dishonest acts of its employee. Hatch Aff. at ¶ 27.  Thus, even after MDB applied the restitution it had recovered from Essex, there remained an unrecovered loss of

---

[1/]      Insurance Company claims that it has immediate subrogation rights and  that those rights have been prejudiced and crippled.  In fact, Insurance Company has not paid any amount under either Policy 1 or Policy 2, so it has not accrued any subrogation rights as yet.  Its claim is premature. *See Federal Insurance Company v. Plaza Drugs, Inc.*, 333 F. Supp. 1305, 1308 (D. D.C. 1971) (stating that an insurance company's right to subrogation does not materialize until after it pays the insured).  Regardless of whether characterized as subrogation, reimbursement, or reduction of loss amount, the issue is still what credit Insurance Company gets under these facts.

$366,351.22. Hatch Aff. at ¶ 35, 36. MDB clearly has not yet been made whole for the losses it sustained during a period in which Insurance Company provided coverage for the dishonest acts of Essex. Hatch Aff. at ¶ 27 and 42. Under the made whole doctrine, Insurance Company is precluded from exercising its right of subrogation until MDB has been made whole for all of its losses. *See id.*

Apparently, Insurance Company's argument is the procedural one that MDB must first process and adjust its claims with Insurance Company **before** seeking restitution from Essex. This is patently artificial and absurd. Indeed, Insurance Company cited no legal authority to support this proposition. Whether MDB collected restitution from Essex before it recovered on its claims under Policy 1 and Policy 2 and collected payment from Insurance Company or did so afterward is irrelevant. The issue still remains how those Essex restitution funds should be applied against the amounts owed by Insurance Company under the Policies, whether as reduction of loss or as subrogation repayment.

Insurance Company argues that MDB should have made a claim with Insurance Company first, and then recovered from Essex. Somehow because MDB did not pursue this course, Insurance Company's rights of subrogation (or credits depending on how application is conceived) are impaired and MDB will be collecting more in recovery than it is entitled ultimately to receive. Worse yet, MDB did this to circumvent Insurance Company's rights. Nothing could be more misconceived. In actuality, MDB acted to captive restitution from Essex first because time was critical in order to avoid dissipation or disappearance of Essex's assets as a source of restitution. After recovery, MDB then prosecuted its claim under the Policies. Gorelick Aff. at ¶ 6. Regardless of the order of

- 11 -

the recovery, and despite Insurance Company arguments, the issue and the outcome is the same. Insurance Company is not entitled to a credit for the funds MDB recovered from Essex under either a subrogation or amount of loss analysis because MDB has not yet been made whole.

Insurance Company's abstract case citations in support of its contrary position fail even to address this issue, except implicitly and indirectly, by arguing without legal citation that the entire recovery must be applied either in the year it was recovered (2005) or to the last losses first.[2] The cases relied on by defendant are inapposite and distinguishable. Those cases apply the recognized principle that when the insured is made whole by recovery from a tortfeasor or releases the tortfeasor upon an agreed recovery, the effective ability of the insurer to enforce its subrogation rights is prevented. In *Miller v. St. Paul Insurance Co.*, 203 A. 2d 923 (D.C. App. 1964), for example, the court determined that Miller, as the insured, did not have a separate claim against St. Paul because he already had been paid in full by the tortfeasor for the damages he sustained. Here, MDB has not been made whole. There remains an unrecovered loss in the amount of $366,351.22. Hatch Aff. at ¶ 35, 36.

In *Federal Insurance Co. v. Plaza Drugs, Inc.*, 333 F. Supp. 1305 (D.D.C. 1971), Federal instituted suit against its insured's tenant claiming that the tenant negligently and carelessly permitted a fire to occur in the building for which Federal had paid the insured its losses under the insurance policy. The tenant contended that it was not liable to Federal because it had signed a release with the owner of the building

---

[2] Even under Insurance Company's theory it is unclear why Insurance Company applied amounts recovered during and after the Policy 2 period to both Policy 1 and 2.

absolving it of any and all liability from the fire. This Court concluded that "a release of the alleged tort-feasor from liability on the insured loss by the insured prior to the payment of the insured's claim by the insurer bars the insurer form asserting a right of subrogation. . . ." *Id.* at 1307. Here, MDB did not give the tortfeasor, Essex, any release. Therefore, if Insurance Company's right to subrogation ever matures by payment, MDB has not prejudiced or interfered with that right. MDB has not released or absolved Essex of her liability to MDB or its subrogees in any way.

Finally, in *Soper v. First Security Insurance Co.*, 148 A.2d 580 (D.C. Mun. App. 1959), the court concluded that because the insured had already settled a claim with the tortfeasor for the loss of his automobile and because he had signed a release with the tortfeasor without first alerting the insurer, the insured had lost his right to also sue the insurance company. Here, MDB notified Insurance Company and requested consent, but acted when Insurance Company delayed in responding and any recovery from Essex would have been lost or made more difficult to obtain. Gorelick Aff. at ¶ 6.

The recovery of funds from Essex did not prejudice or eliminate Insurance Company's right to subrogation where it has not paid any claim as yet. Indeed, in some sense MDB was complying with its perceived obligations under ¶ E3i of the Policies to cooperate and assist in settlement of its claim as well as protecting Insurance Company. MDB Apx. 40. Far from impairing Insurance Company's rights, MDB has fostered them. Insurance Company is more likely received a higher benefit because of MDB's decision to act quickly and therefore recover a higher amount. Based on the foregoing, there is not factual or legal summary bases for granting judgment for Insurance Company.

**CONCLUSION**.

For the foregoing reasons, as well as those offered at any permitted oral argument before the Court, defendant's summary judgment should be denied.

PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER, CHTD.

By:_____
    Roy Niedermayer, Esq. #180380

4800 Hampden Lane, 7th Floor
Bethesda, MD 20814
Telephone: (301) 951-4456

Attorney for Plaintiff

- 14 -