IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MDB COMMUNICATIONS, INC.  )
                          )
        Plaintiff,        )
                          )
v.                        ) Civil No. 05-CV-02131-PLF
                          )
HARTFORD CASUALTY INSURANCE COMPANY )
                          )
        Defendant.        )

**AFFIDAVIT OF PHILIP A. GORELICK IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. My name is Philip A. Gorelick. I am an attorney who engaged in 2005 to represent MDB Communications, Inc. ("MDB") with regard to matters arising out of the fraudulently diversion of money from MDB by Marilyn Essex, an employee of MDB, by means of a series of forged checks drawn on MDB's accounts by the employee.

2. I am over eighteen years of age and competent to testify to the facts contained in this affidavit which are true and are based on my personal knowledge.

3. MDB engaged me, in part, to assist it with obtaining restitution from its employee for money wrongfully taken by Essex.

4. The attached Exhibits A-D are authentic, genuine and accurate copies of e-mail communications I sent to Diane Scott and Renee Beauford who identified themselves to me as representatives of Hartford Casualty Insurance Company regarding MDB's claim YKBFD 03998.

5. The factual contents of Exhibits A-D are true.

6. I am experienced in the negotiation and collection of money owed to my clients in situations similar to the facts of this case. In matters involving such as this case, time is critical in collecting assets before Essex could dissipate or hide them from collection efforts.

I hereby swear or affirm under the penalties of perjury in accordance with the requirements of 28 U.S.C. §1746 that the foregoing statements are true.

_____
Philip A. Gorelick

# EXHIBIT A
# TO AFFIDAVIT OF PHILIP A. GORELICK

## Scott, Diane T (CLAIM, Claims)

**From:** Philip A. Gorelick [phil@gorelickpc.com]
**Sent:** Wednesday, February 16, 2005 6:42 PM
**To:** Diane.Scott2@TheHartford.com
**Cc:** chatch@mdbcomm.com

Dear Ms. Scott: Attached is a draft of an agreement under negotiation between my client, MDB Communications, Inc., which is your insured under the policy regarding claim #YKBFD 03998, and Marilyn M. Essex's attorneys. I believe the enclosed document is self explanatory.

**The document has not yet been finalized, is still under negotiation, and will likely change, but, if all goes well, we plan to have the wrongdoer, Ms. Marilyn M. Essex, execute and deliver the Memorandum, the Demand Note and the Deed of Trust referenced in the attached this coming Friday morning at 10:30 AM Washington, DC Time.**

The amount of my client's loss is yet unknown, and may be more or less than the $225,000 represented by the Note. [The amount of the Note was arbitrarily selected as being more than the perceived existing equity in the residence, to allow for some appreciation in the value thereof. The Note and Deed of Trust are not being taken in payment or satisfaction of our claim against Ms. Essex, but only as a vehicle for partially securing her promises to make restitution. The equity in the residence may not exceed $140,000, once closing costs are paid and existing liens are satisfied.

I believe it is in the best interests of both my client and The Hartford that these documents be executed and delivered. We do not, however, wish to interfere with The Hartford's right of subrogation under the policy, nor do we wish to prejudice our claim under the policy in any respect.

**Therefore, we seek the written consent of the Hartford to our moving forward in having the attached document, and the referenced Note and Deed of Trust, or some negotiated version thereof, executed and delivered.**

**Time is of the essence in moving forward with this. Please have the appropriate person or people within The Hartford respond to me by e-mail to consent to my moving forward as contemplated, or have them call me if they are unwilling to do so.**

Philip A. Gorelick, Esq.
Philip A. Gorelick PC
1700 Wisconsin Avenue, NW
Washington, DC 20007
Tel: 202-588-2116
Fax: 202-333-4343
E-mail: phil@gorelickpc.com

This message may contain confidential and/or legally privileged information from the law firm of Philip A. Gorelick PC. If delivered to anyone other than the intended recipient, please notify the sender immediately by return e-mail or by telephone and delete the message, along with any attachments, from your computer. Dissemination of the information contained in this e-mail is strictly prohibited. Thank you.

MEMORANDUM

THIS MEMORANDUM is made by and between MARILYN M. ESSEX ("Essex"), a resident of the State of Maryland, residing at 4203 Independence Street, Rockville, MD 20853, and MDB COMMUNICATIONS, INC., a _____ corporation, with principal place of business located at 1050 17th Street, NW, Suite 500, Washington, DC 20036 (the Company"), and is effective as of the \_\_ day of February, 2005.

RECITALS:

R-1: The Company is an advertising agency, providing a variety of services to its clients; and

R-2: For a number of years, ending on February 8, 2005, at which time Essex resigned her position as controller at the Company, Essex was a part time employee of the Company; and

R-3: During her tenure at the Company, Essex unlawfully misappropriated funds of the Company, and has acknowledged the same in a signed writing; and

R-4: During the period of her employment, Essex estimates that the aggregate loss caused to the Company by her improper conduct (the "Loss Occasioned by Essex's Conduct") is in the range of between $100,000 and $200,000, but she has been unable to accurately quantify such loss; and

R-5: Since such loss was first discovered by the Company, on or about February 8, 2005, the Company has been attempting to discover the methods employed by Essex in the misappropriation of the Company's funds, as well as the magnitude of the Loss Occasioned by Essex's Conduct, and the Company's investigation is not yet complete and is ongoing as of the effective date hereof. Accordingly, the magnitude of the Loss Occasioned by Essex's Conduct is not yet known; and

R-6: As a consequence of the improper acts of Essex, the Company has incurred and continues to incur (and will need to pay) sizable financial obligations to lawyers, accountants and others who are investigating the Loss Occasioned by Essex's Conduct or are otherwise attempting to mitigate such loss to the Company (as now or hereafter incurred and/or paid by the Company, the "Ancillary Expenses").

R-7: In connection with the foregoing, Essex has indicated that she wishes to make restitution to the Company, to the full extent of her ability to do so, including reimbursing the Company for the Loss Occasioned by Essex's Conduct (as determined by the Company after investigation), together with the Ancillary Expenses incurred and to be incurred by the Company in connection with the foregoing.

R-8: . Based upon the limited information known about the improper activities of Essex, and subject to further investigation on the part of the Company, Essex and the Company have agreed that as a step towards Essex making full restitution to the Company with regard to the

Loss Occasioned by Essex's Conduct, including the Ancillary Expenses, concurrently with the execution and delivery hereof, Essex will execute and deliver a Demand Promissory Note in the amount of $225,000, as well as a third lien Deed of Trust on her residence located at 4203 Independence Street, Rockville, MD 20853, subject only to two senior lien deeds of trust in the aggregate amount of approximately $168,000, and the parties wish to memorialize their agreements as to certain related matters, as are more fully set forth herein.

NOW, THEREFORE, in consideration of the premises, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The Recitals set forth above are incorporated herein and made a part hereof by this reference.

2. Essex hereby acknowledges, affirms and reaffirms each of the factual statements set forth in the Recitals hereof as being true and correct. The same may be utilized by the Company for any and all lawful purpose(s), including, without limitation, to bar Essex's discharge in any bankruptcy proceeding to which she may become a party.

3. Concurrently with the execution and delivery hereof, Essex will execute and deliver a Demand Note in the principal amount of $225,000, and a third lien Deed of Trust (the "Deed of Trust") on her residence to secure the same, in the forms of <u>Exhibit B</u> and <u>Exhibit C</u> attached hereto and made a part hereof by this reference. Essex authorizes the Company to record the Deed of Trust among the Land Records of Montgomery County, Maryland, and promises to pay such Demand Note in accordance with its terms, upon the Company's demand, and to perform each and every obligation set forth in the Deed of Trust, as and when the same becomes due. Essex further agrees that the costs to the Company of preparing and negotiating the Demand Note, the Deed of Trust and this Memorandum, including the Company's legal and other fees associated therewith, and of recording the Deed of Trust, including, but not limited to all recordation and transfer taxes associated therewith, she be and become a part of the Ancillary Expenses.

4. The parties hereto acknowledge and agree that the magnitude of the Loss Occasioned by Essex's Conduct, and of the Ancillary Expenses, is not currently know by the parties, and that the same may or may not exceed $225,000. Accordingly, the parties agree that the Demand Note is not being taken by the Company in satisfaction of or substitution for any obligation or liability that Essex may now or hereafter have to the Company with reference to the Loss Occasioned by Essex's Conduct, the Ancillary Expenses, or otherwise, whether under law, in equity, by reason of this Memorandum, or otherwise, but is simply a vehicle for securing all or a part, as the case may be, of such liability on the part of Essex; nor shall the execution and delivery of this Memorandum or the documents referenced herein be deemed to convert an obligation arising by way of criminal misconduct on the part of Essex into a civil debt, the parties agreeing that this Memorandum is not intended to do so, but is merely a part of ongoing efforts of the parties to procure restitution for the Loss Occasioned by Essex's Conduct and the Ancillary Expenses. Accordingly, it is agreed that if the aggregate amount of the Loss Occasioned by Essex's Conduct, and the Ancillary Expenses shall be determined by the

Company to exceed $225,000, then upon the demand of the Company, Essex shall pay to the Company the balance of such aggregate liability over and above the amounts which may be recovered by the Company as a result of the execution and delivery of this Memorandum, and the documents related hereto, or from the sale of Essex's residence.

5.  Promptly after the execution and delivery hereof, Essex shall list her residence for sale, and shall cooperate in all respects with the listing broker to procure the sale thereof, seeking to have closing on any such sale occur during the month of June, 2005, or earlier, if Essex chooses to close on such sale earlier. From time to time, at the request of the Company, Essex agrees to provide evidence to the Company as to the listing of the residence for sale, and that all real estate taxes and assessments on the residence, and the deeds of trust thereon, are kept current. Essex shall list the residence for not less than $350,00 unless the Company shall otherwise agree, and shall provide the Company with a copy of the listing agreement and of the listing card that is a part thereof. The Company, or its attorney, shall be free to consult with the listing broker or agent as to progress being made toward procuring a contract and settlement, and Essex hereby consenting thereto.

6.  Essex hereby acknowledges and agrees that:

    (a)  she has been represented by independent counsel in the preparation and negotiation of this Memorandum and of the Demand Note and Deed of Trust referenced herein, and has had the opportunity to ask her counsel any questions that she might wish to in connection herewith;

    (b)  no representations or agreements not set forth in this Memorandum have been given or made by the Company, or its counsel, to induce Essex to enter into this Memorandum or the Demand Note and Deed of Trust referenced herein, but she is doing so of her own free will in an effort to make restitution for the Loss Occasioned by Essex's Conduct, including the Ancillary Expenses.

7.  Both parties to this Memorandum have participated in the preparation and negotiation hereof, and, accordingly, in construing this Memorandum, neither of the parties shall be considered as having drafted the same.

8.  This Memorandum does not represent the entire agreement of the parties hereto, with reference to the subject matter hereof, but is an interim step in Essex's efforts to make restitution to the Company for the Loss Occasioned by Essex's Conduct, it being acknowledged and agreed that the investigation by the Company of the Loss Occasioned by Essex's Conduct is as of yet ongoing, and has not been concluded, and that discussions between the parties and their respective counsel are continuing with the objective, if possible, of having Essex make full restitution to the Company for the Loss Occasioned by Essex's Conduct, including the Ancillary Expenses, to the fullest extent of her ability. Accordingly, there may be other agreements reach between the respective parties in reference thereto.

9.  Essex agrees to cooperate fully with the ongoing investigation being conducted by the Company, and, in connection therewith, will, among other things, provide the Company with

originals or copies of all of her bank statement pertaining to bank accounts, whether checking, savings or otherwise, maintained by her over the past three years, whether maintained at banks, savings and loan associations, credit unions, stock brokerage companies or other financial institutions, and will fully and completely answer the reasonable questions of the Company and its counsel to the extent that she is able to do so.

10. This Memorandum shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns, and shall be governed in all respects by the laws of the District of Columbia, without reference to its conflict of laws provisions.

11. This Memorandum may not be altered or amended verbally, but only by an agreement signed by the parties hereto, and may be executed in multiple counter-parts, each of which shall be an original document, and both of which, taken together, shall comprise one and the same document.

12. The terms and conditions of this Memorandum are incorporated into the Demand Note and the Deed of Trust by this reference.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Memorandum, under seal, with the intention of being bound hereby.

_____
MARILYN M. ESSEX

MDB COMMUNICATIONS, INC.

By:_____
    Cary Hatch, President

District of Columbia, SS:

This instrument was acknowledged before me on this ___ day of February, 2005, by Marilyn M. Essex.

_____
Notary Public

[Notarial Seal]

My commission expires:_____

# EXHIBIT B
# TO AFFIDAVIT OF PHILIP A. GORELICK

**Scott, Diane T (CLAIM, Claims)**

| | |
|---|---|
| **From:** | Philip A. Gorelick [phil@gorelickpc.com] |
| **Sent:** | Thursday, February 17, 2005 1:17 PM |
| **To:** | Renee.Beauford@TheHartford.com |
| **Cc:** | Diane.Scott2@TheHartford.com; 'Cary Hatch' |
| **Subject:** | MDB Communications, Inc. Marilyn M. Essex Claim YKBFD 03998 |

Dear Ms. Beauford: Thank you for taking my call in the absence of Diane Scott today.

I believe the attached Memorandum is self-explanatory.

Please provide me with The Hartford Insurance Company's written consent to our going forward with this effort to secure partial restitution.

The amount of the Note is arbitrary, as the magnitude of the loss from the fraud is still not quantifiable. The $225,000 amount of the Note has been arbitrarily selected and simply represents a sum in excess of the equity in the residence. We are taking this solely as a vehicle to obtain a lien on Ms. Essex's residence, and not because we want to assume the risk of her credit. The equity in the residence could perhaps produce $135,000 or so if the Property is sold for a price of $350,000, which is our best guess. The deeds of trust on the Property amount to $168,000, we are advised.

We plan to have the Note, Deed of Trust and Memorandum signed by Ms. Essex tomorrow morning, so time is of the essence.

Please respond to me as soon as possible, but no later than this afternoon.

Thank you.


Philip A. Gorelick
Philip A. Gorelick PC
1700 Wisconsin Avenue, NW
Washington, DC 20007
Tel: 202-588-2116
Fax: 202-333-4343
E-mail: phil@gorelickpc.com


This message may contain confidential and/or legally privileged information from the law firm of Philip A. Gorelick PC. If delivered to anyone other than the intended recipient, please notify the sender immediately by return e-mail or by telephone and delete the message, along with any attachments, from your computer. Dissemination of the information contained in this e-mail is strictly prohibited. Thank you.

2/22/2005

# EXHIBIT C
# TO AFFIDAVIT OF PHILIP A. GORELICK

**Scott, Diane T (CLAIM, Claims)**

**From:** Philip A. Gorelick [phil@gorelickpc.com]
**Sent:** Friday, February 18, 2005 9:41 AM
**To:** Diane.Scott2@TheHartford.com; Renee.Beauford@TheHartford.com
**Cc:** 'Cary Hatch'
**Subject:** MDB Communications, Inc. - Marilee M. Essex Claim # YKBFD 03998

Diane and Renee:

As a follow up to my earlier e-mails to you, I want to advise you that in her effort to make partial or complete restitution, as the case may be, the wrongdoer, Marilyn M. Essex, is expected to execute and deliver the attached document, together with the third lien deed of trust on her residence and the related Demand Note, this afternoon at 1:30 PM. The Deed of Trust is a standard form of residential Maryland Deed of Trust in the amount of $225,000.

We estimate the equity in the residence, after paying off closing costs and two prior Deeds of Trust to be in the range of $145,000 to $150,000, if the property sells for the $350,000 listing price which we anticipate.

The $225,000 Note is only a vehicle for obtaining a $225,000 lien on the residence. We are not accepting the note in payment of any obligation that Ms. Essex has to make restitution, nor, by executing these documents, are we converting this criminal matter into strictly a civil matter, and the Memorandum so states. The loss before restitution may be more or less than the $225,000 amount of the Note. We will know when our investigation is complete, but this may take several months, as a minimum.

We ask again The Hartford consent to our going forward with the proposed document signing today, and that it notify me that by doing so, my client will not have prejudiced its claim against the Hartford under its policy in any way. We desire and intend to preserve our insurance claim against the Hartford to cover any shortfall in funds received by way of restitution, subject, of course, to the $100 deductible.

Please respond immediately.

Philip A. Gorelick
Philip A. Gorelick PC
1700 Wisconsin Avenue, NW
Washington, DC 20007
Tel: 202-588-2116
Fax: 202-333-4343
E-mail: phil@gorelickpc.com

This message may contain confidential and/or legally privileged information from the law firm of Philip A. Gorelick PC. If delivered to anyone other than the intended recipient, please notify the sender immediately by return e-mail or by telephone and delete the message, along with any attachments, from your computer. Dissemination of the information contained in this e-mail is strictly prohibited. Thank you.

# EXHIBIT D
# TO AFFIDAVIT OF PHILIP A. GORELICK

### Scott, Diane T (CLAIM, Claims)

**From:** Philip A. Gorelick [phil@gorelickpc.com]
**Sent:** Friday, February 18, 2005 5:40 PM
**To:** Renee.Beauford@TheHartford.com; Diane.Scott2@TheHartford.com
**Cc:** 'Cary Hatch'
**Subject:** Claim YKBFD 03998 MDB Communications, Inc.

Renee: We were disappointed to hear through our insurance agent that Hartford's attorneys would not consent to the arrangement I have, as a courtesy, sent to your company "Because Hartford doesn't like taking Deeds of Trust on people's residences."

Under these circumstances, where the person in question has procured substantial amounts of money from the insured by forgery and/or fraud, and is willing to make restitution by granting my client a Deed of Trust on her residence, Hartford's position is patently absurd. Is this the level of cooperation I can expect from our insurer on our claim?

The actions taken by the undersigned on behalf of my client, MDB Communications, Inc., your insured, may ultimately benefit the Hartford Insurance Company. Therefore, should the Hartford Insurance Company become entitled to a right of subrogation, and receive a benefit from our actions, by reducing Hartford's exposure to my client under its indemnity claim under the Policy, we will expect and require the Hartford to pay a portion of this firm's legal fees in procuring the Deed of Trust on the wrongdoer's residence.

Regards.

Philip A. Gorelick
Philip A. Gorelick PC
1700 Wisconsin Avenue, NW
Washington, DC 20007
Tel: 202-588-2116
Fax: 202-333-4343
E-mail: phil@gorelickpc.com


This message may contain confidential and/or legally privileged information from the law firm of Philip A. Gorelick PC. If delivered to anyone other than the intended recipient, please notify the sender immediately by return e-mail or by telephone and delete the message, along with any attachments, from your computer. Dissemination of the information contained in this e-mail is strictly prohibited. Thank you.