UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| MDB COMMUNICATIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-2131 (PLF) |
| HARTFORD CASUALTY INSURANCE CO., | ) | |
| Defendant. | ) | |
| MDB COMMUNICATIONS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-0604 (PLF) |
| HARTFORD CASUALTY INSURANCE CO., | ) | |
| Defendant. | ) | |

OPINION

There are several pending motions in these consolidated cases. In Civil Action No. 05-2131 ("Case 1"), there are pending cross motions for summary judgment, as well as a motion to amend the complaint. In Civil Action No. 06-0604 ("Case 2"), there is a pending motion to dismiss or, in the alternative, for summary judgment.[1]  For the reasons explained

---

[1] The papers submitted to the Court in connection with the motions in Civil Action No. 05-2131 include: Defendant's Motion for Summary Judgment ("Def's MSJ"); Defendant's Memorandum of Law in Support of Summary Judgment ("Def's Mem."); Plaintiff's Motion for Summary Judgment ("Pl's MSJ"); Affidavit of Cary Hatch in Support of Plaintiff's Motion for Summary Judgment ("Hatch Aff."); Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Def's Opp."); Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl's Opp."); Affidavit of Roy I. Neidermayer in

below, the Court grants defendant's motion for summary judgment on the claims in the

Complaint in Case 1, denies plaintiff's motion for summary judgment on the claims in the

Complaint in Case 1, denies defendant's motion to dismiss or, in the alternative, for summary

judgment with respect to the claims in the Complaint in Case 2, and denies plaintiff's motion to

amend the complaint in Case 1 as moot.

I.  BACKGROUND

Plaintiff MDB Communications, Inc. ("MDB") brought these actions against its

insurance provider, Hartford Casualty Insurance Company ("Hartford"), for breach of contract

after Hartford refused to compensate MDB for losses it sustained through employee dishonesty.

See, e.g., Case 1 Complaint ¶¶ 19, 36.  There are two insurance policies at issue in Case 1, the

policy periods of which ran from July 28, 2003 to July 28, 2004 and from July 28, 2004 to July

28, 2005.  See Case 1 Complaint ¶¶ 5, 22.  There are four insurance policies at issue in Case 2,

the policy periods of which ran from July 28, 1999 to July 28, 2003, also starting and ending on

---

Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion
for Summary Judgment ("Neidermayer Aff."); Defendant's Reply in Further Support of its
Motion for Summary Judgment ("Def's Reply"); and Plaintiff's Reply to Opposition to its
Motion for Summary Judgment ("Pl's Reply").  Policy number 42 SBA EV9713, issued to MDB
Communications by the Hartford Casualty Insurance Company, is Exhibit A to defendant's
motion for summary judgment (hereinafter "Policy").  Plaintiff's Motion for Summary Judgment
includes a Statement of Undisputed Material Facts ("Pl's SMF").  Defendant's Motion for
Summary Judgment also lists Undisputed Facts within it (Def's SMF").

The papers submitted to the Court in connection with the pending motion in Civil Action
No. 06-0604 include: Defendant's Motion to Dismiss or, in the alternative, for Summary
Judgment ("Def's Case 2 MTD"); and Plaintiff's Memorandum of Points and Authorities in
Opposition to Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment
("Pl's Case 2 Opp.").  This motion will be treated as a motion for summary judgment because
both parties rely on materials outside of the complaint.

July 28 of each year.  See Case 2 Complaint ¶¶ 4, 17, 30, 43.  Defendant asserts that the relevant language in the two policies at issue in Case 1 is the same.  See Def. Mem. at 4.  Plaintiff agrees.  See Pl's SMF ¶ 1, Pl's MSJ at 1.

Marilyn Essex was an employee of plaintiff MDB from 1998 or 1999 to 2005.  See Def's SMF ¶ 1; Pl's SMF ¶ 12.  Essex is alleged to have forged checks from MDB's bank accounts paid for her benefit to third parties.  See Case 1 Complaint ¶¶ 13, 30; Def's SMF ¶ 1.  MDB alleges that it sustained financial losses as a result of Essex's actions which exceeded the amount of coverage available to plaintiff for such an event.  See Case 1 Complaint ¶¶ 15-17, 31-34.[2]  In its statement of undisputed material facts and accompanying affidavit, plaintiff alleges the following losses:

> During the period July 28, 1999 through July 28, 2000, MDB sustained losses in the amount of $79,219.51 . . . Hatch Aff. at ¶ 21.
>
> During the period July 28, 2000 through July 28, 2001, MDB sustained losses in the amount of $102,230.72 . . . Hatch Aff. at ¶ 22.
>
> During the period July 28, 2001 through July 28, 2002, MDB sustained losses in the amount of $126,330.44 . . . Hatch Aff. at ¶ 23.
>
> During the period July 28, 2002 through July 28, 2003, MDB sustained losses in the amount of $107,341.21 . . . Hatch Aff. at ¶ 24.

---

[2] Section E of the Employee Dishonesty Coverage Endorsement is entitled "Occurrence Definition."  That section provides: "As used in this Endorsement, Occurrence means all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."  Policy, Employee Dishonesty Coverage Endorsement.

> During the period July 28, 2003 through July 28, 2004, MDB sustained losses in the amount of $153,857.47 . . . Hatch Aff. at ¶ 25.
>
> During the period July 28, 2004 through February 7, 2005, MDB sustained losses in the amount of $76,882.62 . . . Hatch Aff. at ¶ 26.

Pl's SMF ¶¶ 17-22 (paragraph numbers omitted). Thus, the total amount of loss asserted as a result of Essex's conduct was $645,861.97. See Pl's SMF ¶ 23; Pl's Case 2 Opp. at 1.

Plaintiff discovered Essex's embezzlement on or about February 7, 2005. See April 8, 2005 Proof of Loss, Exh. B to Def's MSJ. On February 16, 2005, Essex executed a promissory note to pay MDB $225,000 plus 7% interest per annum as restitution for her actions. See March 29, 2006 Letter from David S. Elmore to Lucinda E. Davis (counsel for Hartford). Beginning on March 11, 2005 and at various times throughout 2005, plaintiff received several restitution payments from Essex. These payments totaled $279,510.75. See Hatch Aff. ¶¶ 31-35; Pl's MSJ at 9.

Plaintiff gave notice of its claims to Hartford by letter dated March 16, 2005. See March 16, 2005 Letter from Roy I. Neidermayer to the Hartford Casualty Insurance Company, Exh. 1 to Neidermayer Aff. On or about April 12, 2005, plaintiff submitted two proof of loss forms to defendant, one for the 2003-2004 policy period and one for the 2004-2005 policy period. These proof of loss forms alleged a loss of $153,857.47 in the 2003-2004 period and a loss of $76,882.62 in the 2004-2005 period. See Def's SMF ¶ 4; April 8, 2005 Proof of Loss Forms, Exh. B to Def's MSJ.[3] The April 8, 2005 proof of loss forms stated that credits (obtained

---

[3] The Court will refer to all documents by the dates written on them rather than by the dates they are alleged to have been sent or received by any party.

from the employee) had been applied to pre-July 23, 2003 losses. See April 8, 2005 Proof of Loss Forms, Exh. B to Def's MSJ.

On August 11, 2005, Hartford rejected plaintiff's April 8, 2005 proofs of loss, on the grounds that "*they fail to address the total loss incurred by the insured and the potential credits based upon the restitution [MDB] has received to date.*" August 11, 2005 Letter from Lucinda E. Davis (counsel for Hartford) to Roy I. Neidermayer (counsel for MDB), Exh. C to Def's MSJ (emphasis added) ("August 11, 2005 Letter").[4] In the same letter, Hartford's counsel informed MDB's counsel that "the Hartford will permit the insured to submit revised proofs of loss accompanied by the following documentation within 30 days after the date of this letter." Id.

Defendant alleges that on September 9, 2005, "plaintiff submitted the identical proofs of loss" – that is, those for the 2003-2004 and 2004-2005 periods only – "with limited additional documentation . . . but again failed to provide any documentation establishing that it had not been fully compensated by Ms. Essex." Def's SMF ¶ 6; see September 8, 2005 Letter from Roy I. Neidermayer (counsel for MDB) to Lucinda E. Davis (counsel for Hartford), Exh. F to Def's MSJ ("September 8, 2005 Letter").

---

[4] In the letter, Hartford's counsel requested that certain documents be provided or made available to Hartford "upon submission of any revised proofs of loss." August 11, 2005 Letter. The requested documents included, among others: bank statements for the entire period of Essex's conduct, including before July 2003; and "documentation of any and all restitution received by the insured relating to any theft by Ms. Essex, including all correspondence, agreements, copies of checks received in restitution, and bank statements showing the deposit of any and all monies received in restitution[.]" Id.

Plaintiff filed the first lawsuit in the District of Columbia Superior Court on October 7, 2005.  See Case 1 Complaint.[5]  Defendant removed the first lawsuit to this Court on November 1, 2005.  See Notice of Removal.  Dispositive motions were due in Case 1 on April 3, 2006.  On the eve of the summary judgment deadline, on March 31, 2006, plaintiff filed a motion for leave to amend the complaint in Case 1, in order to add claims from four policy periods between July 28, 1999 and July 28, 2003.  Also on March 31, 2006, plaintiff filed the second lawsuit with respect to the four earlier policy periods and a motion to consolidate the two cases, which was granted.

## II.  DISCUSSION

### A. Standard for Summary Judgment

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits [or declarations], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the

---

[5] The first lawsuit relates to only two policies – one whose term was from July 28, 2003 to July 28, 2004 and the other whole term was from July 28, 2004 to July 28, 2005.  See Case 1 Complaint ¶¶ 5, 22.  These were the only two policies as to which plaintiff had submitted proofs of loss to Hartford by the time the first suit was filed.

non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  The non-moving party's opposition must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  Moreover, "[w]here insurance contract language is not ambiguous, summary judgment is appropriate because a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence."  Travelers Indem. Co. of Illinois v. United Food and Commercial Workers Int'l Union, 770 A.2d 978, 985 (D.C. 2001) (citations and quotations omitted); see also Nationwide Mut. Ins. Co. v. Richardson, 270 F.3d 948, 954 (D.C. Cir. 2001).

*B. Relevant Insurance Policy Provisions*

As noted above, defendant asserts that the relevant language in the two policies at issue in the Case 1 Complaint is the same.  See Def. Mem. at 4.  Plaintiff agrees.  See Pl's SMF ¶ 1, Pl's MSJ at 1.  The Employee Dishonesty Coverage Endorsement provides, in relevant part:

> A. COVERAGE[:]  We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Causes of Loss.
>
> 1. Covered Property[:] Covered Property means "money" . . . "securities" . . . and other tangible property of intrinsic value and not otherwise excluded.
>
> 2. Covered Causes of Loss[:] Covered Causes of Loss means dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you, with the manifest intent to:
>
> a. Cause you to sustain loss; and also
>
> b. Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions or other employee benefits earned in the normal course of employment) for:
>
> (1) The "employee"; or
>
> (2) Any person or organization intended by the ["]employee" to receive that benefit.

Section E of the Employee Dishonesty Coverage Endorsement is entitled "Occurrence Definition."  That section provides: "As used in this Endorsement, Occurrence means all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."  Policy, Employee Dishonesty Coverage Endorsement.

The policies include a Special Property Coverage Form with a section entitled "E. Property Loss Conditions." This section provides, in relevant part:

> 3. **Duties in the Event of Loss or Damage**[:] You must see that the following are done in the event of loss or damage to Covered Property:
>
> * * *
>
> b. Give us prompt notice of the loss or damage. Include a description of the property involved.
>
> * * *
>
> f. Permit us to inspect the property and records proving loss or damage. Also, permit us to take samples of damaged property for inspection, testing and analysis.
>
> * * *
>
> h. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. *You must do this within 60 days after our request.* We will supply you with the necessary forms.
>
> * * *
>
> 4. **Legal Action Against Us**[:] *No one may bring legal action against us under this insurance unless:*
>
> *a. There has been full compliance with the terms of this insurance.*
>
> * * *
>
> 6. **Recovered Property**[:] If either you or we recover any property after loss settlement, that party must give the other party prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property to the Limit of Insurance.

Policy at Tab 7 (emphasis provided).

The Common Policy Conditions includes a section entitled "K. Transfer of Rights of Recovery Against Others to Us." Policy at Tab 8. This section provides, in relevant part:

> 1. Applicable to Property Coverage: If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing to impair them. But you may waive your rights against another party in writing:
>
> a. Prior to a loss of your Covered Property.
>
> b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:
>
> (1) Someone insured by this insurance;
>
> (2) A business firm . . . owned or controlled by you[] or . . . that owns or controls you[] or
>
> (3) Your tenant.

Policy at Tab 8.

### C. Case 1 Analysis

Plaintiff argues that the losses it sustained as a result of Essex's dishonest acts are covered losses under the insurance policies. See Pl's MSJ at 5. Plaintiff moves for judgment totaling the maximum coverage under each of the policies at issue in Case 1, because it alleges losses that exceed that maximum coverage. See Pl's MSJ at 8.

Defendant also moves for summary judgment (and states in opposition to plaintiff's motion for summary judgment that its motion for summary judgment also served as its

opposition to plaintiff's motion). See Def's Opp. at 1. Hartford maintains that it is entitled to summary judgment in Case 1 for two reasons. First, Hartford argues, the policy "requires full compliance with policy conditions before an insured can file suit. MDB's failure to submit documentation in support of its claim constituted a breach of policy conditions, and MDB cannot pursue the current litigation." Def's MSJ at 2. Second, Hartford argues that plaintiff's "decision to obtain compensation from its dishonest employee rather than from Hartford effectively relieved Hartford of liability; MDB's agreement precludes Hartford from recovering any amounts otherwise owed under the policy." Id. at 3. The Court agrees with the defendant's first argument, and therefore grants summary judgment for the defendant.[6]

> As the District of Columbia Court of Appeals has explained:
>
> An insurance policy is a contract between the insured and the insurer, and in construing it we must first look to the language of the contract. Where insurance contract language is not ambiguous[,] a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence. Unless it is obvious that the terms used in an insurance contract are intended to be used in a technical connotation, we must construe them consistently with the meaning which common speech imports.

Travelers Indem. Co. of Illinois v. United Food and Commercial Workers Int'l Union, 770 A.2d at 986 (internal citations and quotations omitted); see also Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 455 F. Supp. 2d 37, 41 (D.D.C. 2006). Moreover, "[w]here the policy expressly makes compliance with its terms a condition precedent to liability on the part of the insurer, failure to comply with the notice provisions will release the insurer of liability on the

---

[6] Because the Court agrees with defendant's first argument, it does not analyze or opine on defendant's second argument.

policy." Travelers Indem. Co. of Illinois v. United Food and Commercial Workers Int'l Union, 770 A.2d at 991 (citing Lee v. Travelers Ins. Co., 184 A.2d 636, 638 (D.C. 1962)). The Court sees no reason why compliance with all of the relevant clauses in the policy in this case should be treated any differently from compliance with a notice provision, particularly where, as here, the insurance policy requires compliance with *all* of its terms as a prerequisite to bringing suit. See, e.g., Powell v. United States Fid. and Guar. Co., 855 F. Supp. 858, 861 (E.D.Va. 1994), aff'd 88 F.3d 271 (4th Cir. 1996) (summary judgment granted for insurance company where insured failed to provide requested relevant financial information).

The policies at issue in this case expressly conditioned the right to bring suit against Hartford on "full compliance with the terms of this insurance." Special Property Coverage Form, Policy at Tab 7. The policies required that plaintiff permit defendant "to inspect the property and records proving loss or damage" and send to defendant "a signed, sworn statement of loss *containing the information we request* to investigate the claim. You *must do this within 60 days* after our request." Special Property Coverage Form, Policy at Tab 7 (emphasis added).

Hartford requested information on the amounts MDB received from Essex in writing on multiple occasions. For example, a Hartford employee requested in writing: "Please advise us of the meaning of the statement 'Credits applied to pre July 28, 2003 losses' which has been added to the second page of the Proof of Loss form." See May 12, 2005 Letter from Diane T. Scott (Hartford employee) to Roy Niedermayer (counsel for MDB), Exh. I to Def's MSJ. Defendant followed up on this request: "We would also like to remind you that our letter of May 12, 2005 requested clarification that has not yet been provided." See June 14, 2005 Letter from

Diane T. Scott (Hartford employee) to Roy Niedermayer (counsel for MDB), Exh. 9 to Neidermayer Aff. Some clarification was provided in a letter from MDB's counsel dated June 24, 2005, but he did not attach any documentation. See June 24, 2005 Letter from Roy Neidermayer (counsel for MDB) to Diane Scott (Hartford employee), Exh. 10 to Neidermayer Aff.

The August 11, 2005 letter from Hartford to MDB rejected the previously filed proofs of loss because "they fail to address the total loss incurred by the insured and the potential credits based upon the restitution [MDB] has received to date." August 11, 2005 Letter. The August 11, 2005 letter permitted plaintiff to submit revised proofs of loss within 30 days, accompanied by the requested documentation. Id. In this letter, Hartford explicitly requested from MDB "[d]ocumentation of any and all restitution received by the insured relating to any theft by Ms. Essex, including all correspondence, agreements, copies of checks received in restitution, and bank statements showing the deposit of all monies received in restitution[.]" Id.

MDB responded to the August 11, 2005 correspondence by letter dated September 8, 2005. See September 8, 2005 Letter from Roy Neidermayer (MDB's counsel) to Lucinda E. Davis (Hartford's counsel), Exh. F to Def's MSJ.[7] With that letter, MDB failed to provide additional documentation regarding the restitution received from Essex. The letter states: "I appreciate that we disagree on the method to apply any restitution received from Ms. Essex. However, the insured has applied any restitution received in accordance with standard accounting and bookkeeping principles which it deems proper. Therefore, the Proofs of Loss are

---

[7] Page 1 of the letter is dated September 8, 2005, while the header on page 2 is dated September 6, 2005. The Court will refer to the letter as the September 8, 2005 letter.

accurate as originally submitted with respect to the amounts claimed and the credits applied. By this letter, MDB is resubmitting the Proofs of Loss by incorporation." Id. In this letter, MDB thus explicitly refused to submit the extra documentation requested in Hartford's rejection of the proofs of loss on August 11, 2005. Plaintiff made statements indicating that it would comply in part and in the future. See, e.g., id. ("In lieu of bank statements, I am prepared to provide you with copies of all the forged checks.").[8] Plaintiff in effect asked Hartford to trust MDB that it had properly deducted the amount of restitution provided by Essex "in accordance with standard accounting and bookkeeping principles which it deems proper." Id. Plaintiff refused to give Hartford any more information than that. Such self-serving, self-policing information-sharing procedures were in no way what the express terms of the policy required.

In its opposition to defendant's motion, plaintiff asserts that it did in fact give all of the requested information to defendant. See Pl's Opp. at 4. Plaintiff's opposition includes within it a lengthy chart of its summary of the communications between the parties. See Pl's Opp. at 5-9. Of course, a chart within an opposition brief is not evidence. The Court also notes that communications outside of the 60-day period provided for in the insurance policy and the 30-day period agreed to by the insurance company would not bring plaintiff into compliance with the terms of the insurance policy. For example, the chart includes summaries of communications from December 21, 2005 to March 13, 2006. Those dates are more than 60 days – indeed, more

---

[8] The Court notes, however, that Hartford requested copies of documents related to the restitution payments made to MDB and MDB's bank statements, not just copies of the forged checks.

than 100 days – after the August 11, 2005 request from Hartford, and are even farther removed from the original May 2005 requests.[9]

Furthermore, to the extent that the Court considers the chart at all, it notes that the chart reflects that certain documents requested in the August 11, 2005 letter, including Essex's W-2 forms and copies of all the forged checks, were provided to defendant on December 21, 2005. See Pl's Opp. at 8. That date is considerably outside of the 30-day period granted for compliance with the August 11, 2005 request for information and the 60-day period provided for in the insurance policy. It therefore is more like a concession of noncompliance than a persuasive argument in opposition to defendant's motion for summary judgment. According to plaintiff's chart, the only items submitted by MDB before February 2006 were copies of the forged checks, a copy of Essex's employment agreement, copies of Essex's W-2 statements, an acknowledgment from Essex admitting responsibility for the forgery, a safe haven signature form, and copies of agreements between MDB and Essex.[10] Notably missing from this list is information relating to any restitution received by MDB, which was requested in May 2005 and again in August 2005.

The Court concludes that MDB breached the provision of the insurance policy requiring it to submit the information requested by the insurance company, and it therefore may not bring suit under the policies at issue in Case 1. The Court will grant defendant's motion for summary judgment with respect to the claims in the Complaint in Case 1. See Powell v. United

---

[9] Those dates are also well after the first of these two lawsuits was filed – in October 2005.

[10] MDB also offered to let Hartford inspect bulkier items, like general ledgers and bank statements, at its office. See Pl's Opp. at 5-9.

States Fid. and Guar. Co., 855 F. Supp. at 861 (summary judgment granted for insurance company where insured failed to provide requested relevant financial information); Rymsha v. Trust Ins. Co., 746 N.E.2d 561, 562 (Mass.App.Ct. 2001) (affirming grant of summary judgment for insurance company where insured failed to provide pertinent financial information); Tran v. State Farm Fire and Cas. Ins. Co., 961 P.2d 358, 363 (Wash. 1998) (affirming grant of summary judgment for insurance company where insured failed to abide by provisions in the policy requiring cooperation with insurer's investigation); see also Adelman v. St. Louis Fire and Marine Ins. Co., 293 F.3d 869, 869-70 (D.C. Cir. 1961) (affirming grant of summary judgment for insurance company where insured had failed to file formal, rather than informal, proof of loss within 60 days); Diamond Serv. Co. v. Utica Mut. Ins. Co., 476 A.2d 648, 652 (D.C. 1984) ("It is in order to promote the efficient and economic liability insurance administration that such provisions are given effect in the interest of the public as well as the insurer."); Sidibe v. Travelers Ins. Co., 468 F. Supp. 2d 97, 101-02 (D.D.C. 2006) (granting summary judgment for insurance company where insured failed to comply with policy requirement that the insured provide prompt notice of an accident or loss as well as provide additional information);  Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 455 F. Supp. 2d at 43 (granting summary judgment for insurance company where insured failed to comply with policy requirement that the insured provide prompt notice of an accident or loss).

### D.  Case 2 Analysis

If there were undisputed evidence before the Court that the four policies at issue in Case 2 had the identical relevant language as the policies at issue in Case 1, the analysis above

might be dispositive of the claims in the Complaint in Case 2, as well as those in the Complaint in Case 1.[11]  Hartford's motion to dismiss or, in the alternative, for summary judgment in Case 2 incorporates by reference its arguments from its motion for summary judgment in Case 1.  See Def's Case 2 MTD at 2.  As plaintiffs note in opposition, however, defendant did not submit any evidence to the Court regarding those four policies along with its motion to dismiss or, in the alternative, for summary judgment in Case 2.  See Pl's Case 2 Opp. at 9.  The Court therefore cannot grant defendant's motion because there is no evidence before it with respect to those four policies.

Accordingly, the Court grants defendant's motion for summary judgment on the claims in the Complaint in Case 1, denies plaintiff's motion for summary judgment on the claims in the Complaint in Case 1, denies defendant's motion to dismiss or, in the alternative, for summary judgment with respect to the claims in the Complaint in Case 2, and denies plaintiff's motion to amend the complaint in Case 1 as moot.  An Order consistent with this Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:  March 28, 2007                         United States District Judge

---

[11]     The policies at issue in Case 1 define an occurrence as "all loss caused by, or involving, one or more 'employees', whether the result of a single act or series of acts."  Policy, Employee Dishonesty Coverage Endorsement.  Accordingly, all of the loss caused by Essex's dishonest acts are a single occurrence, although her actions span several policy years.  In addition, the August 11, 2005 letter requested "[d]ocumentation of *any and all* restitution received by the insured relating to *any theft* by Ms. Essex . . ." August 11, 2005 Letter (emphasis provided).